## Campbell *et al. versus* McLain.

1. If an assignee for benefit of creditors sue out a mortgage belonging to the trust, attend at the sheriff's sale, under an execution issued by him, and purchase the real estate in his own name, he buys as trustee for the creditors.

2. If the trustee purchase with an intention to hold for himself, it is a legal fraud.

3. Any confirmation of such sale must be upon a full knowledge of all the circumstances, and a deliberate examination by the parties interested, *i. e.*, the *cestui que trusts.*

4. The confirmation by the court of a partial account of the assignee, in which he charged himself with the "proceeds of sale" under the mortgage, without showing that he was the buyer, and the acceptance by the creditors of their dividends of the balance of the account, without objection or complaint, is not a confirmation of such sale.

APPEAL from the decree of the Court of Common Pleas of *Indiana county :* sitting in Equity.

Charles B. Campbell assigned all his estate to Charles C.

[Campbell v. McLain.]

McLain, in trust for the benefit of creditors. Among the assets which passed by the assignment, was a mortgage given by F. H. Amend, upon which judgment was recovered subsequently to the assignment for $2011.09. Under this judgment the mortgaged premises, two hundred and seventy-eight acres and thirty-four perches of land, were sold by the sheriff for $200 to McLain, he being the highest bidder. He purchased for his own use and benefit. It is not claimed that there was any fraud or contrivance on the part of McLain, or any person connected with the sheriff's sale. McLain's deed was acknowledged in open court, and delivered to him upon payment of the amount of his bid.

After this, McLain filed his account as assignee, in which (deducting the costs of sale) he charged himself with "proceeds of sale of real estate of F. H. Amend, $190.84." After notice according to law, this account was confirmed on December 30th 1857, and recorded as required by law. An auditor was appointed to distribute the fund, whose report of distribution was confirmed on April 3d 1858, and the complainants and other creditors of C. B. Campbell accepted and received their dividends without objection or complaint. On the 4th April 1863, C. C. McLain filed his final account as assignee as aforesaid, showing a balance in his hands for distribution of $2706.38.

The complainants then filed their bill in equity to compel Mc-Lain to make sale of the land above mentioned, and account to the complainants and others, creditors of Campbell, for the proceeds thereof. McLain having filed his answer to the bill and interrogatories, the court below decreed a sale of the land for the benefit of the trust; from which decree McLain appeals.

W. Banks and A. W. Taylor, for appellant, referred to Leisinring v. Black, 5 Watts 303; Fisk v. Sarber, 6 W. & S. 18; Sheldon v. Sheldon, 13 Johns. 220; Chorpenning's Appeal, 8 Casey 315; Prevost v. Gratz, P. C. C. R. 378; Drysdale's Appeal, 2 Harris 531; Adlum v. Yard, 1 Rawle 163; Bruch v. Lantz, 2 Id. 419; Stroble v. Smith, 8 Watts 280; Beeson v. Beeson, 9 Barr 299; Share v. Anderson, 7 S. & R. 63; Brown v. Caldwell, 10 Id. 114; Painster v. Henderson, 7 Barr 48; Wilson v. Bigger, 7 W. & S. 111, 123.

(The Reporter was not able to obtain more of the appellant's argument than the foregoing citations.)

Stewart and Clark, for appellees.—The mortgage was trust property, and whatever interest it conveyed in the land was also in trust. The trustee had the exclusive control of its collection, with full power over the process, and the sheriff was his instrument. McLain's duty required him to get as much as he could,

[Campbell *v.* McLain.]

and therefore his position as purchaser was in opposition to his duty as trustee.

The rule extends to all having a fiduciary relation to the property: Beeson *v.* Beeson, 9 Barr 281; Drysdale's Appeal, 2 Harris 536. Nor do the fairness and honesty of the transaction vary the rule. In Fisk *v.* Sarber, 6 W. & S. 18, the sale was of the property of the insolvent himself by a lien-creditor, and the insolvent's trustee who bought had no trust fund to pay the debt or buy the property. So in Sheldon *v.* Sheldon, 13 Johns. 220; Chorpenning's Appeal, 8 Casey 315; Prevost *v.* Gratz, Peters C. C. R. 378; Brightly's Eq. § 100. If McLain had not been acting for the creditors, they would have attended to the sale to protect their interest.

If the trustee's fraud was *actual* it could not be ratified: Story on Equity, § 307; Jackson *v.* Summerville, 1 Harris 309. If *legal* fraud merely, and creditors knowing that McLain claimed the land as his own, accepted their dividends, it might be a ratification; but actual knowledge must be traced to them: 1 Story's Equity, § 307; Bruch *v.* Lantz, 2 Rawle 418. But there is no evidence of knowledge in the creditors. Constructive notice to the creditors is not sufficient; the ratification must be intentional. The record of the account does not furnish such evidence.

The opinion of the court was delivered, January 8th 1866, by

READ, J.—A trustee for creditors suing out a mortgage belonging to the trust, and attending at the sheriff's sale under the execution issued by him or his order, and purchasing the real estate at such sale in his own name, it is as trustee for the creditors. This is the legal implication arising from the whole transaction. "It is certainly not necessary," says Justice Black in Sherman's Appeal, 3 Casey 66, "to decide now, that an executor who buys at his own sale, or, what is precisely the same thing, gets another to buy for him, holds the lands on the same trusts that it was subject to before the sale." In that case the executor settled what purported to be a final account, and set it up as a bar to any further claim, but the court unhesitatingly decided that it was no bar; and in Rosenberger's Appeal, 2 Casey 69, Chief Justice Lewis said: "The acceptance of part of the proceeds, under the circumstances stated, does not estop the parties entitled from claiming the residue. Such an act might bind them not to disturb the title of a purchaser, but surely the payment of part of what the executor owed is no reason why they should not pay the residue." "When," says Chief Justice Gibson in Chronister *v.* Bushey, 7 W. & S. 153, "he appears as both seller and buyer, as when the estate has been sold by him and bid in for him at auction, the preventive justice of a chan-

cellor goes further, and forbids him to acquire an indefeasible title to it against the *cestui que trust* on any pretence."

The general principle applicable to and governing all cases like the present, is well stated in the Manual of Equity Jurisprudence, p. 176: "If a trustee or other person standing in a fiduciary relation acquires property, or makes a profit, by means of transactions within the scope of his agency or authority, or if a person employs another's property in any trade or speculation, there will be a constructive trust as to the property so acquired, or the profits so made, for the benefit of the *cestui que trust*, principal owner or other person standing in the opposite relation."

There can therefore be no doubt that in the present case the creditors had a right to consider the trustee as purchasing for them, upon the same trusts on which the mortgage had been held. In this case the property purchased was sold by the insolvent for $2808, and the balance due on the mortgage at the rendition of the judgment was $2011.09, and this was the residue of the purchase-money unpaid. The price bid was $200, of which the trustee only paid the costs, reducing it to $190.84, for which he simply gave his receipt as trustee, never paying a dollar of it to the sheriff.

If the trustee purchased with an intention to hold it for himself, it was clearly a legal fraud; and looking at the enormous disparity between the original price and the price bid, being one-fourteenth only of the amount it was sold for by the insolvent, it forces upon us a moral conviction that it was an actual fraud upon the creditors.

Any confirmation, therefore, of such a sale by the real seller to himself, must be upon a full knowledge of all the circumstances and a deliberate examination by the parties interested, who are the *cestuis que trust*, whose interests this trustee was bound by every principle of honesty and good faith to protect and promote. It resembles itself to " an election by matter *in pais*, which can only be determined by plain and unequivocal acts under a full knowledge of all the circumstances and of the party's rights."

" One is not bound to elect until he is fully informed of the relative value of the things he is to choose between; and if he make an election before the circumstances necessary to a judicious and discriminating choice are ascertained, will not be bound:" 12 Casey 496. Such is the manifest tenor of the language of Chief Justices Lewis and Black in the cases above cited.

In this case a partial account was filed by the assignee containing this entry, without a single word of explanation showing the accountant was both seller and buyer:—

" Proceeds of sale of real estate of F. H. Amend on *lev. fa.* No. 71 March Term 1857.   $190.84."

Between this period and the filing of the final account, or

[Campbell *v.* McLain.]

during its pendency, the facts of the sale appear to have been known to the creditors. The land remains in the hands of the trustee, and he loses nothing by the decree of the court except his expected profit from an act intended on his part as a positive breach of trust. Such acts of a trustee ought not to be passed over or excused, and no counsel could ever advise an assignee for creditors in like circumstances that he could become a purchaser for himself, and for his own benefit, at his own sale.

Decree affirmed at the costs of the appellant.